MONTGOMERY COUNTY.

JANUARY TERM, 1884, No. 69.          APRIL 22, 1884.

## Zimmerman *et al. v.* Galbraith.

1. Substantial damages may be recovered for the breach of a parol contract to convey real estate.

2. Where the plaintiff, in pursuance of a parol contract to convey real estate, had executed the deeds, recorded them, and offered them to the defendant, and the defendant repudiated the contract, but made no offer to reconvey, the measure of damages is, in addition to the expense to which plaintiff was put before the repudiation, the value of the property he deprived himself of upon the faith of the defendant's promise.

3. The houses were to be conveyed subject to ground rents. Defendant offered to prove that subsequently to the contract they had been sold by the sheriff on process against the plaintiff, and sheriff's deeds were made to the purchaser. *Held*, that the offer was properly rejected.

Before MERCUR, C. J.; GORDON, PAXSON, TRUNKEY, STERRETT, GREEN, and CLARK, JJ.

Error to the Court of Common Pleas of *Montgomery County.*

Case by William Galbraith against George W. Zimmerman, J. Milton Zimmerman, M. P. Anderson, and Ida Zimmerman, executors of the last will and testament of Joshua Zimmerman, deceased, to recover damages for a breach of a parol contract to convey real estate.

The facts, as they appeared at the trial before BOYER, P. J., were as follows:

About August 1, 1878, William Galbraith was the owner of eight small houses in Philadelphia, valued at $1,300 each, and each subject to a ground rent of $800.

[Zimmerman *et al. v.* Galbraith.]

At the same time, Joshua Zimmerman was the owner of a farm of 21 acres in Montgomery county, Pa. P. M. O'Connel, a real estate agent, testified, *inter alia,* that on August 1, 1878:

"Through this talk I got him and Mr. Galbraith together. We met Mr. Zimmerman by appointment, I think at Phœnixville. We rode then out together to see some woodland where he was cutting telegraph poles that I was getting from him. On the way out they talked about this bargain of trading the farm for those eight houses in Philadelphia. Mr. Galbraith offered Mr. Zimmerman seven houses in trade for his farm. Mr. Zimmerman refused to take seven, but said he would take eight. Mr. Galbraith agreed to give him the eight houses, seven of which were finished, or about being finished, and one which was to be finished in January. Each were to prepare their own deeds. That was about the substance of the agreement that day."

Zimmerman executed a deed to Galbraith for the farm, but it was never delivered. August 29, 1878, Galbraith executed deeds to Zimmerman for the houses. These deeds were subsequently recorded. On the 6th of January, 1879, they were handed over to O'Connel, who gave the following receipt for them:

"Philadelphia, *January 6, 1878.*

"Received of William Galbraith deeds of six houses on Garret street, one house on Wilder street, and one house on Vernon street, eight in all, said deeds being a conveyance from William Galbraith and wife to Joshua Zimmerman of the premises therein described, to be delivered to said Joshua Zimmerman by me.

"P. M. O'Connel."

They were offered to Zimmerman, but refused.

Galbraith testified, *inter alia:*

"I met Mr. Zimmerman on or about August 1, 1878. * * * He still wanted the eight houses, and finally, in coming down in the wagon, I agreed to give him the eight houses. He then said it is a bargain, that he was to get eight houses from me, valued at $500 each, subject to ground rents, for his farm, valued at $4,000, which was to be clear of incumbrance.

"On the 13th of January, 1879, Mr. O'Connel and I came to Norristown with all these deeds to be given to Mr. Zimmerman. We met Mr. Zimmerman on the street. I told him we had been to Rogers' office and the deed was not there; and I asked Zimmerman where the deed was, and he said at the Rambo House. I told him that

\*   \*   I had written once or twice for the title to the farm, and that he had not answered my letter, and that if he did not give me the deed at once I would have to enter suit against him.

"Mr. O'Connel then offered him all the deeds to the houses and said 'Here are all the deeds and papers.' He made some excuse and said the deed to the farm was at the Rambo House; we went there and could not find it; he then went into the car and called me in by myself; he said, 'Galbraith, I don't want to give that farm now, I don't want houses in the city now, and the houses are with you and the farm is with me, and I would rather keep the farm.' I said, 'Mr. Zimmerman, that won't do; we have made a fair and square bargain; you will be well satisfied, as far as I know,' and that was the first that he ever complained to me that I know of. I said when I made a bargain I always lived up to it, and that I had fulfilled my contract with him and that he had not fulfilled his, and that I was determined to have my bargain. He said, 'I will make it all right with you if you back down from your bargain;' I told him nothing but my bargain would do anything for me."

The defendant offered to prove that the Galbraith properties in Philadelphia were sold by the sheriff of the city of Philadelphia, in the year 1879, on process against William Galbraith, and that sheriff's deeds therefor were made to the purchaser for the same.

Refused.   Exception.

The defendant presented, *inter alia*, the following point:

"That if the jury can find, from the evidence, the parol contract as alleged, the measure of damages is the actual expense only of the plaintiff in pursuance of said contract."

*Answer of the Court.*—This, as stated, the Court decline to affirm. The measure of damages is not the expense to which he was put on account of the contract before it was finally repudiated by Zimmerman, but also the property of which he deprived himself upon the faith of Zimmerman's promise.

The Court charged the jury, *inter alia*, as follows:

"The true measure of damages in this case, if you find the foregoing facts, is the value of the houses conveyed at the time of the conveyance, that is when the deeds for the same were recorded, so far as the seven houses are concerned, November 8, 1878, and interest upon that amount to this time from that date; that is

[Zimmerman *et al. v.* Galbraith.]

November 8, 1878.   To this you will add expenses incurred by the plaintiff before the contract was finally repudiated by Zimmerman, and which were incurred necessarily and reasonably upon the faith of the contract. Clearly in this would be included the cost of the manure which was put upon the place, and the cost of the deeds of conveyance, and the recording of them, and whatever other expenses were properly and necessarily incurred by the plaintiff upon faith of Zimmerman's promise.''

· Verdict for plaintiff for $4,633 and judgment thereon.

The defendants thereupon took this writ, assigning for error, *inter alia,* the refusal of their point as above, the rejection of the evidence offered, and the charge.

*George W. Rogers* and *D. Ogden Rogers* for plaintiffs in error.

If the measure of damages laid down by the Court in answer to our eighth point were true, it would be equivalent to specific performance.   For if the plaintiff receives the full value of the houses, it would be equivalent to an order for purchase money, which cannot be done: Meason *v.* Kaine, 13 P. F. S., 335 ; 17 P. F. S., 126.

Damages are such only as the plaintiff suffered in performing his part of contract, and not the value of the land : Bender *v.* Bender, 1 Wr., 419.

If such a recovery be allowed, it would be a virtual repeal of the statute, and to allow a recovery for the value of the land would be equivalent to specific performance of the contract: Thompson *v.* Sheplar, 22 P. F. S., 160.

The question of the delivery of the deeds should have been left to the jury.   The Supreme Court, in the ejectment case, 12 W. N. C., 53, only said that it was a good delivery on Galbraith's part, but in order to constitute a good delivery, there must be a handing over of the deeds, with intention to part with the title, and an acceptance of the deed by the recipient.

The recording of a deed is not delivery, but evidence of it : Chess *v.* Chess, 1 P. & W., 32 ; Harwood *v.* Steel, 4 Phil., 88.

And it may be rebutted : Boardman *v.* Dean, 10 Casey, 252..

The offer should have been received, if for no other purpose than to affect the question of damages, for no searches were produced to show that these properties were clear of incumbrance except the ground rents, and if they were incumbered so that they could not be conveyed clear, plaintiff had suffered no damage ; he lost

[Zimmerman *et al. v.* Galbraith.]

nothing. The offer was to prove that they had been sold on· process against Galbraith, which must have been liens previous to the execution of the deeds.

*George N. Corson* for defendant in error.

May 5, 1884, the opinion of the Court was filed by PAXSON, J.:

This was an action to recover damages for a breach of a parol contract to convey real estate. The jury have found the contract. That it could not be enforced specifically because not in writing does not prevent the recovery of damages for its breach. The damages were substantial and the jury have so found. The plaintiff was to convey certain houses in the city of Philadelphia, each subject to an incumbrance of $800, in exchange for defendant's farm in Montgomery county. The plaintiff conveyed seven houses and placed the deeds on record; the defendant then refused to convey the farm. Under this state of facts, the defendant asked the Court to instruct the jury that "the measure of damages is the actual expense only of the plaintiff in pursuance of the contract." The instruction the learned judge refused, saying: "The measure of damages is not the expense to which he was put on account of the contract before it was finally repudiated by Zimmerman, but also the property of which he deprived himself upon the faith of Zimmerman's promise."

We see no error in this ruling. The plaintiff had performed his part of the contract; he has done what was the equivalent of the payment of the purchase money; he had conveyed the houses to the defendant and placed the deed on record. That the houses were subsequently sold by the sheriff upon the incumbrances does not affect the case. The defendant knew the title had been conveyed to him; that the control of the houses had passed from the plaintiff to him, and if he chose to allow them to be satisfied in this manner, he has no ground of complaint. If he intended to repudiate the contract·after full performance on the part of the plaintiff, he should at least have reconveyed the houses to the plaintiff, and thus have placed him in a position where he could protect himself. He made no such conveyance, nor do I find any evidence that he offered to convey. Under such circumstances, the plaintiff was entitled to recover the consideration which he had given; it would be inequitable to confine him to the expenses which he had paid.

[Osterstock *et al. v.* Sigman *et al.*]

A careful examination of the case fails to disclose any serious errors in the rulings of the Court, and the judgment therefore is

Affirmed.